ROBERT DOUGLASS *vs.* THE PRESIDENT AND MANAGERS OF THE
BOONSBOROUGH TURNPIKE ROAD COMPANY.

ACTS OF 1814, CH. 71, AND 1852, CH. 266, CONSTRUED—THE LATTER DECLARED
CONSTITUTIONAL: TURNPIKE ROADS—THEIR POWERS AND LIABILITIES: LAWS
RELATING TO PUBLIC HIGHWAYS—HOW CONSTRUED: CONSEQUENTIAL DAMAGES.
The appellees by the Act of 1814, ch. 71, were incorporated with power to
make a turnpike road from Boonsborough to a point on the Potomac river.
By the 10th sec. it was provided that "the said road be made on, over
and upon the bed of the present road as laid out and used;" and by the
Act of 1852, ch. 266, the appellees were further "authorized to occupy,
grade, and if necessary, change the public road, leading from Sharpsburg
to the Potomac river, and to exercise over said road all the rights and
powers conferred on said corporation by the Act of 1814, ch. 71." The
appellee proceeded to occupy and grade the road, and the appellant, through
whose lands the said road passed, thereupon sued the appellee to recover
damages for the trespass in occupying and grading the road without his
consent; and in the fourth count of his declaration, claimed consequential
damages for injuries resulting to his property from the grading and ditching
of the road, &c.—HELD:

1st. That the Act of 1852, ch. 266, is not unconstitutional, and that the
appellee under that Act was legally authorized to take possession of the
highway mentioned in the Act, and occupy and grade the same for the pur-
poses of a turnpike road, without being subject to a new condemnation, and
compensation to the appellant for that portion of the road which passed over
and upon his land.

2nd. That if any compensation could be rightfully claimed and allowed for
injuries resulting from the acts complained of, it was not by or to the owner
of the soil, but to the community which had borne the burden of the original
condemnation

3rd. It would be contrary to the spirit and intention of the original laws cre-
ating public highways, not to give them a liberal construction: and though
a grant to a private corporation is to be construed strictly, yet it is not
to be so construed as to defeat the object of the grant.

4th. That there is a clear distinction between the cases of rail roads and canals,
and plank and turnpike roads; the occupation of a highway by the former
being permanent and *exclusive*, whereas, the latter are considered public
highways, over which every citizen has a right to travel in his own mode of
conveyance—the imposition of tolls being simply a means of keeping them
in repair.

5th. That the claim for consequential damages was dependent upon facts to be
found by the jury, and the appellant's 4th instruction, viz: that if the appel-
lee did certain acts complained of *"unnecessary and improper to the grading*
of said public road, then they would be answerable therefor,"—properly
announced the law upon the rights of the appellant in that respect.

APPEAL from the Circuit Court for Washington County:

This was an action instituted by the appellant against appellees, on the 7th of August 1857. The declaration which is in trespass contained four counts: 1st. For breaking and entering plaintiff's close, called "Moreland," cutting down and carrying away trees, cutting and digging the soil; digging up to and under the fences of the plaintiff and undermining them, throwing down the fences and gates, and digging near the foundation of his barn and removing the earth and rendering it insecure. 2nd. For entering said land, digging the soil and causing gutters and channels, so that water could and did run over the fields; and making high embankments by digging along the fences and gates on the private roads and ways of the plaintiff, used for passing with wagons, &c., to his fields and barn, and cutting away the earth, so as to render the gates useless, &c. 3rd. Is similar to the 2nd, or a repetition of it in general language. 4th. Charges that through said tract, called "Moreland," the public road leading from Sharpsburg to the Potomac river, passed and had run for a long period of time, and that the plaintiff had and ought to have had certain ways and roads for wagons, &c., leading from said public road on each side into his fields and to his barn, and so used and enjoyed the same, but the defendants, with a view to injure the plaintiff, and deprive him of the use of said private ways and roads, and render inaccessible his gates, cut and dug the earth and made gutters and trenches along on both sides of said public road, and across said private ways and roads, so as to greatly obstruct the same, &c.

The defendants pleaded: 1st. That they did not commit the wrongs alleged in the declaration. 2nd. That they did what was alleged by the plaintiff's leave. 3rd. Limitations. 4th. A plea of justification, under the Acts of 1814, ch. 71, and 1852, ch 266.

The plaintiff replied as follows: 1st. Joinder of issue on the first plea. 2nd. A traverse of the leave or license alleged in the 2nd plea. 3rd. That the causes of action *did* accrue within three years before bringing of suit. 4th. That the wrongs complained of were continuous and did continue from their commission to the time of bringing the suit, all the while subjecting him to loss and injury. 5th. That the defendants were not entitled to the said highway over the plaintiff's land as alleged in the 4th plea. 6th. That the alleged trespasses were not the legal and proper use by the defendants of said highway, mentioned in the 4th plea. 7th. That the defendants, before committing said acts, did not pay, nor ever have paid to the plaintiff any compensation for the privilege of grading, using and occupying said road, running over his land, nor did they ever agree with him or take inquisition by jury in the premises as to the damages to be paid for the privileges and use of said road, before or since said act. 8th. As to the 4th plea, that before the defendants' entered the land and graded the road, they did not compensate the plaintiff for the privilege, nor agree with him concerning the grading, using, &c., of it, or as damages therefor, nor have condemnation by inquisition, then or afterwards. 9th. That as to said 4th plea, the defendants did not grade and occupy said public road in pursuance and lawful exercise of the authority, rights and powers conferred by said Acts of Assembly. 10th. That as to said 4th plea, the defendants cut down trees and earth and removed the same, in and on the sides of the road, and did other acts unnecessary and improper to the grading of the road, and for other purposes than the grading of it.

The defendants rejoined as follows:

1st. They joined issue upon the plaintiff's 2nd, 3rd, 5th, 6th, 9th and 10th replications. 2nd. To the 4th replication they demurred, because that it alleges certain acts

complained of to have been done by a *continuando*, whereas they did not lie in continuance. 3rd. To the allegations of the 7th replication, they said the plaintiff had no claim or right by law to be paid any compensation, or to any agreement therefor, or inquisition, because, as they aver, they have graded and occupied said public road in pursuance of powers and rights vested in them by the said Acts of Assembly, "and in so doing have not departed from the track of said public road, or changed the same through that portion of said public road that passes through, over and upon the lands of the plaintiff." 4th. As to 8th replication, the defendants before grading said road were not bound to compensate the plaintiff for the privilege, or to agree with him for damages, or have condemnation, because they had a right under said Acts of Assembly, so to grade and use it in the manner alleged by them in their 4th plea; and in so doing they did not depart from the track of said public road, or change it, through that portion of it that passed through, over and upon the lands of the plaintiff; and that in such case the plaintiff was not entitled to compensation, or any of the matters pretended or claimed by him in his 8th replication.

The plaintiff joined in the demurrer to the 4th replication, and demurred to the rejoinder to the 7th and 8th replication, assigning for causes, that the Act of 1852, ch. 266, was unconstitutional and void; that sufficient power to do the acts was not shown; that it was not alleged and shown that before grading, &c., compensation was given or agreed for, &c.; that no sufficient facts are stated in answer to these replications, but only matters of law, arguments and inferences; and that they have by said rejoinders departed from the defence set out in their previous pleading, particularly in their 4th plea.

The defendants joined in these demurrers.

The Court below (PERRY, J.,) overruled the demurrer to the plaintiff's 4th replication to the third plea of the defendants, and also overruled the plaintiff's demurrers to the defendants' rejoinders to the 7th and 8th replications.

1st *Exception.*—At the trial of the cause, the plaintiff to support the issues joined on his part, offered evidence of his title to a tract of land called "Moreland," and that he had owned and been in possession of the same since the year 1849; that for many years there had been a public county road through said tract, of a mile in length, which for more than thirty years had been fenced on both sides, and that for the same period of time there had been gates in said fence by which he passed freely from the public road into private ways and lanes leading into the fields and woods, and to the barn of the plaintiff; but that the defendants in grading and ditching said road on both sides, had "by their servants and agents, cut large and deep trenches, and made high and abrupt embankments, so that the said gates and ways have been, since the grading of the said road, obstructed and rendered inaccessible—and almost impassable and useless to the plaintiff,"—"and thereby turned the water off the said road into and on the fields of the plaintiff, and caused the said fields to be washed and overflowed and much injured."

The defendants then gave in evidence the said Acts of Assembly, and also the Acts of November session, 1790, ch. 32, and November 1791, ch. 82, and then proved by several witnesses that the road graded, &c., through the plaintiff's land was the old county road, that had been used by the public from the earliest recollection of the oldest witness, and that it was in no part changed, so far as it ran over and upon the lands of the plaintiff; and that the work was finished on the plaintiff's land in June 1854, and that no trees were cut in or along said road or

the plaintiff's land after February 1854. All the acts done were proved to have been done in the grading of said road, and to have been necessary and proper for the purpose. A great deal of proof was taken also as to the condition of the plaintiff's fences, gates and ways and drainage, to show that he suffered no injury; that the water ran as formerly along and over his fields, &c.; and further that the plaintiff was frequently on the road whilst being graded, and never complained or objected to any thing that was done, except as to removing two trees, cut in 1853, and that he expressed his satisfaction to several witnesses after the road was made, both as to its excellence, and its location over the bed of the old road.

The plaintiff offered the following prayers:

1st. That the Act of 1852, ch. 266, is void and conferred no power.

2nd. That if the jury found that the road graded ran over and through plaintiff's land, and that the defendants did proceed under said Act of 1852 to grade the same, as said Act provides they might do, yet they could not do so until after an agreement with plaintiff for the right of way, or an inquisition for damages and payment thereof.

3rd. That if the defendants did so occupy and grade said road, and that part thereof ran over and upon the lands of the plaintiff, then the defendants in grading the same, could only use such earth and material as would have been necessary and proper for the repair and good order of the road, if it had remained public, under the supervision of the county authorities and not passed into the control of the defendants.

4th. That if the road so passed over the land of the plaintiff, and the defendants used and occupied it under said Act of 1852, as they might; yet if the defendants cut down and removed earth and trees in and upon the sides of the road, and did other acts complained of, unnecessary

and improper to the grading of said public road, then said defendants would be answerable therefor.

The Court refused to grant the first three of said prayers of the plaintiff, and granted the fourth. To the refusal to grant the first three the plaintiff excepted.

*2nd Exception.*—The defendants then, upon all the evidence given and incorporated in the plaintiff's 1st exception, offered three prayers substantially as follows:

1st. That if the jury shall find from the evidence any acts of trespass, and also, that they were committed more than three years before the bringing of this suit, then the plaintiff was not entitled to recover for the same under the issues in this cause.

2nd. That if they find that the defendants acted under the Acts of Assembly, mentioned in the pleadings and given in evidence, and occupied said public road, and that a portion thereof passed over and upon the plaintiff's land, and in so doing, committed the acts alleged in the declaration and pleadings as trespasses, and shall also find that said acts were done rightfully and in pursuance of the rights, powers, &c., conferred on the defendants by law, and with no design to injure the plaintiff, but to carry out the objects and purposes of said Acts of Assembly mentioned in the defendants' 4th plea, and for no other purpose, and used all proper care in doing so, or that the same were done with the leave or license of the plaintiff, then the plaintiff is not entitled to recover for the same or any consequences that may have ensued from them to the plaintiff.

3rd. That if the jury should believe that the defendants occupied and graded said road on the plaintiff's land, under said Acts of Assembly, and afterwards did any rightful and proper acts of repairs on the same, before the bringing of the suit, then said plaintiff is not entitled to recover for any said acts of repairs.

29    v. 22.

These prayers the Court granted, and to such granting the plaintiff excepted.

The verdict and judgment were for the defendants, and the plaintiff appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*R. H. Alvey,* for the appellant.

The first questions in this case arise upon the pleadings. And, in deciding upon the demurrer, the Court is required to examine the whole record for the purpose of discovering the first substantial defect in pleading, and to give judgment against the party committing the first fault, notwithstanding any defect in the particular pleading demurred to. Act of 1856, ch. 112. Art. Demurrer, secs. 36 and 40. *Murdock vs. Winter,* 1 *H. & G.,* 471. *Morgan vs. Morgan,* 4 *G. & J.,* 395. *The State vs. Gaither,* 11 *G. & J.,* 160.

I. The question, then, is, where does the first substantial defect occur? I contend that it is in the defendants' fourth plea.

It is an established rule of pleading—a rule of common law which has been expressly adopted in our new system—that "facts only shall be stated, and not arguments, or inferences, or matter of law." Act 1856, ch. 112, Art. 4th. 1 *Ch. Pl.,* 540. *The case of the Abbot of Strata Mercella,* 9 *Co.,* 25, *a. Frary vs. Dakin,* 7 *John.,* 78.

II. The fourth plea is pleaded to the declaration generally, and is, therefore, to be taken as applicable to all the counts; and if it is an insufficient answer to any one of the counts, though it may be good as to some of them, it is vicious, because, being bad in part, it is therefore bad altogether. *Hughes vs. Sellers,* 5 *H. & J.,* 432. *Phillips vs. Clagett,* 10 *Mees & Wils.,* 102, and 11 *Mees & Wils.,* 84. *Calvert vs. Moggs, Adol. & Ell.,* 632; (37 *Eng.*

*C. L. Rep.*, 200.) *Brewster vs. Hobart*, 5 *Pick.*, 303. *Karthaus vs. Owings*, 2 *G. & J.*, 430. *Steph. Plead.*, 403–5.

The right of the plaintiff to recover by no means depends upon the legality of the act of grading the road, for from acts not illegal in themselves, injurious and actionable consequences may flow. For an action lies by the owner of the land, notwithstanding the Legislature has authorized the entry upon and use of the highway; the legislative license relates only to the road, and leaves the company liable to consequential damages sustained by individuals. *Broom's Leg. Max.*, p. 275. *Guille vs. Swan*, 19 *John.*, 381. *Tinsman vs. Bel. Del. R. R. Co.*, 2 *Dutch.*, 148. *Fletcher vs. A. & S. R. R. Co.*, 25 *Wend.*, 462. *Trustees, &c. in Waterloo vs. A. & R. R. Co.*, 3 *Hill*, 567. *Karthaus vs. Owings*, 2 *G. & J.*, 430. *West River Bridge Co. vs. Dix*, 6 *Howe*, 507. *Williams vs. N. Y. Cent. R. R. Co.*, 16 *N. Y.*, 97. *Carpenter vs. A. & S. R. R. Co.*, 24. *Id.*, 655. *Craig vs. Rochester R. R. Co.*, 39 *Barb.*, 494.

The defendants' 3rd and 4th rejoinders, and to which the plaintiff's demurrers were interposed, are equally defective, and for the same causes as the 4th plea. They state no facts whatever, but set forth legal assumptions, the defendants' own conclusions of the law. I submit, therefore, that neither the 4th plea, nor the rejoinders demurred to, can be sustained. *Birckhead vs. Sanders*, 2 *H. & G.*, 82.

III. The next question arising upon the pleadings, and also upon the third prayer of the plaintiff, is, whether it be competent to the Legislature, where there is an existing public easement in a highway over the land of an owner, to authorize the imposition of an additional burthen upon, or an extension of the servitude to which such land is already subject, in the support of the high-

way, without the consent of, or compensation to the owner?

By the original contract or dedication, the servitude imposed was only the maintaining the road in a good passable condition as a public county road; and if the defendants can justify the taking of a greater quantity of · material than would be required if the road remained as formerly, can it be said that the plaintiff's rights and property are inviolate under the Constitution? It would seem to be most clear that the grading and extending the road, as set forth by the defendants, are additional burdens upon the soil, and that for this, the plaintiff is as much entitled to compensation as if his land had originally, and in the first instance, been taken for the purpose of this graded road; and to deny all redress in such · case, is a virtual violation of that section of the Constitution giving compensation to the owner of property taken for public use. *Williams vs. Plank Road Co.*, 21 *Mo. R.*, 580. *Moale vs. Mayor & C. C. of Baltimore*, 5 *Md. Rep.*, 314. *Rail Road Ex-parte*, 2 *Rich.*, 434. *Gardner vs. Newburgh*, 2 *John. Ch. Rep.*, 162. *Trustees vs. Auburn & Roch. R. Co.*, 3 *Hill*, 567. *Nicholson vs. R. R. Co.*, 22 *Conn. Rep.*, 85, 87. *Haynes vs. Thomas*, 7 *Porter*, (*Ind.*,) 38, 480, 483. *Irvine vs. The Hamburg*, 3 *Hard.*, (*Min.*,) 200.

IV. The Acts of Assembly under which the defendants attempt to justify, cannot be pleaded as a bar to this action, or as an answer to any count in the declaration. The appellee is not a corporation for public purposes, and hence a distinction. The property here is taken for private purposes. *St. Louis vs. Gurno*, 12 *Missouri Rep.*, 414. *Adams vs. Smith*, 18 *Penn. St. Rep.*, 187. This question is presented by the pleadings brought under consideration by the demurrers, and also by the plaintiff's first and second prayers, which were refused. It is a plain and incontrovertible principle, that the

property of the road is in the plaintiff, the owner of the soil, subject only to an easement for the benefit of the public; and that for any disturbance of the soil, or user of the road, other than the proper enjoyment of the easement according to its origin and nature, the owner of the soil has his remedy. He can maintain ejectment for the land, and trespass for any invasion of his right of possession of it, though it be subject to the public easement of a highway. *Dovaston vs. Payne*, 2 *Smith's L. C.*, 90, *and notes. Peck vs. Smith*, 1 *Conn.*, 103, 132. *Jackson vs. Hathaway*, 15 *John.*, 447. *Rust vs. Low*, 6 *Mass.*, 90. *Barclay vs. Howell's Lessee*, 6 *Peters*, 498.

The owner of the soil was only divested of such use and exclusive control of the road as would be inconsistent with the user of the public easement, according to the manner and condition of its origin; and if the road be vacated by the public, or it ceases to be a highway, free to all the public to pass and repass without pay, according to the manner of its origin and former user, then the owner resumes the exclusive possession and control of the ground. *Barclay vs. Howell's Lessee*, 6 *Peters*, 498. *Giesy vs. Cin. Wil. & Zanes. Railway*, 4 *Ohio St. Rep.*, 308. *Jackson vs. Hathaway*, 15 *John.*, 447.

Such being the rights and relation of the plaintiff to this road, I contend that it was not competent to the Legislature to encroach upon these reserved and vested rights of property, by enlarging or changing the nature of the public easement; and that, therefore, the Acts of the Legislature, under which the defendants would justify, because they do not provide for compensation to the owner of the soil of the road, are unconstitutional and void. Const., Art. 3, sec. 46. *Perry vs. Wilson*, 7 *Mass.*, 393. *The case of the Regents*, 9 *G. & J.*, 365. *Wilkinson vs. Leland*, 2 *Peters*, 627. *Thatcher vs. Dartmouth Bridge Co.*, 18 *Pick.*, 501. *Wheeler vs. R. & S. Railway*, 12 *Barb. Sup. Ct.*, 227.

By the operation of these Acts the mere public easement, with its proper limitation and restrictions, becomes transmuted into private property, a franchise, an incorporeal hereditament, and vested in the defendants. *Tippets vs. Walker,* 4 *Mass.,* 595. And, as private property, it is beyond the control of the public authority, and even of the Legislature itself, except by virtue of the eminent domain. *Dartmouth College vs. Woodward,* 4 *Wheat.,* 518. *The West River Bridge Co. vs. Dix,* 6 *How.,* 507. The legislative transmutation is in violation of the contract under which the road had its origin; and it cannot be effected, unless by the consent of, or compensation to, the owner of the soil. *Gardner vs. Newburgh,* 2 *John. Ch. R.,* 162. It has been expressly decided that a rail road company could not lay their rails on a highway, though authorized by their charter, without making compensation to the owner of the soil, and the same doctrine has been recognized in several cases. *Trustee, &c. vs. Auburn & Rochester R. Co.* 3 *Hill,* 567. *Benedict vs. Goit,* 3 *Barb. S. Ct.,* 460, 465. *Fletcher vs. Auburn & S. R. Co.,* 25 *Wend.,* 462. *Starr vs. Camden & Atl. R. R. Co.,* 4 *Zabrisk. R.,* 592. *Donnaher vs. State of Miss.,* 8 *S. & M.,* 649.

V. The Court instructed the jury, at the instance of the defendants, that, upon certain hypotheses, the plaintiff could not recover for the acts and consequences complained of. In granting such an instruction, the Court was bound to assume the truth of all the testimony given to the jury, and of all inferences of fact fairly deducible therefrom, tending to sustain the plaintiff's right to recover. *McElderry vs. Flannagan,* 1 *H. & G.,* 308. *Leopard vs. C. & O. Canal Co.,* 1 *Gill,* 222. The rights of way co-existed with the public easement, and any change by which such rights are destroyed or impaired, must be regarded as injurious to the party, and entitles

him to compensation, as much so as the taking of any other species of property for public use. And the defendants, for any injury to these rights, committed without lawful authority, are liable as tort feasors. *Tinsman vs. The Bel. Delaware R. Co.*, 2 *Dutcher*, 149. *Gardner vs. Newburg*, 2 *John. Ch. Rep.*, 162.

VI. The prayers of the defendants, granted by the Court, are all objectionable, because they put to the jury, and required them to decide upon matters of law, and in other respects, embrace false doctrine, and were well calculated to mislead.

1st. The first prayer is vicious because it submitted to the jury a question of law. What constitutes a trespass is certainly a question of law, that the Court, and not the jury, ought to determine. But that question was directly submitted to the jury in this instruction. 1 *Stark. Ev.*, 410. *Handy & Tull vs. Johnson*, 5 *Md. Rep.*, 450. *Thistle vs. Frostburg Coal Co.*, 10 *Md. Rep.*, 146.

2nd. By this prayer the jury were also required to discriminate between acts of trespass, such as would produce immediate damage, and such acts as might produce consequential injury only, the declaration being for both sorts of tort. The necessity of preserving the distinction was, that the bar of limitation would only apply to the acts giving rise to consequential damage from the time of the specific injury suffered. It was therefore, wrong. *Roberts vs. Read*, 16 *East.*, 215, 216.

3rd. By the second prayer the construction of the Acts of Assembly, under which the defendants would justify, was directly referred to the jury. They were made to determine whether the acts complained of "were done rightfully, and in pursuance of the rights, duties and powers conferred upon them (the defendants) by law." To determine which questions, involved the necessity of construing the statutes, and passing upon the whole law

of the case. That such a procedure was erroneous, has been repeatedly decided. *Plater vs. Scott*, 6 *G. & J.*, 116. *Clarke vs. Marriott*, 9 *Gill*, 331. 1 *Stark. Ev.*, 416, *in note*. *Fell's Point Savings Inst. vs. Weedon*, 18 *Md. Rep.*, 321.

4th. The jury were instructed, by this same second prayer, that if the acts were done lawfully and with no design to injure the plaintiff, and the defendants used proper care, then the plaintiff could not recover for such acts. The *animus*, with which the acts were done, is here made material, which is contrary to all authority. The intent is not at all material to constitute trespass. Whether the act done be by accident, or without the concurrence of the mind, is unimportant. *Scott vs. Shepherd*, 3 *Wils.*, 407, and 2 *Wm. Bl.*, 893. *Leame vs. Bray*, 3 *East.*, 599. Nor does the lawfulness of the act exculpate the party from liability for the consequences of it. For though a man do a lawful thing, yet if any damage thereby befalls another, he shall be answerable, because he that is damaged should be compensated. *Broom's Leg. Max.*, side *p.* 275. *Guille vs. Swan*, 19 *John.*, 381. But the Court below instructed the jury that, if the acts done were lawful, (and of which the jury were made the judges,) and were done with care, and with no design to injure the plaintiff, he could not recover for any consequences that may have ensued, notwithstanding the plaintiff had declared for the consequential injury resulting from such acts. This, I submit, was error. Nor does the form of the issue justify the granting of the prayers. *Planters Bank vs. Bank of Alexandria*, 10 *G. & J.*, 346, Act of 1856, ch. 112, secs. 46, 56, 78, 101.

5th. That, by this second prayer, the legal question of what constitutes leave and license was submitted to the jury. What facts fulfil the legal definition of license should be determined by the Court. The facts alone should be left to the jury.

6th. The prominent vice in the third prayer is that it submitted to the jury a question of law as to what amounted to rightful and proper acts of repair on the road. The Court should have told the jury what acts of repair were authorized by law, and left them to apply the facts accordingly.

This prayer is erroneous in another particular. It might be that the defendants did rightful and proper acts of repair on the road, and yet have performed them in such a manner, and the results flowing from them such, as to make them injurious and actionable to the plaintiff. *Slingsby vs. Barnard,* 1 *Roll. Rep.,* 430.

*D. Weisel* and *Geo. Schley,* for the appellee.

1st. The instruction as to the plea of limitations being a bar to the plaintiff's action, if the jury found from the evidence that the acts complained of were done more than three years before the bringing of the suit, was clearly correct, and this plea would be a complete bar, even if the acts complained of were not justified, or were not authorized by the Acts of Assembly; in other words, if they were all clear trespasses when committed. No authorities need be adduced upon this point.

2nd. That the Act of 1852, ch. 266, is not unconstitutional and void.

The charter of the company, Act of 1814, ch. 71, incorporated it to make a turnpike from Boonsborough to Swearingen's Ferry, on the Potomac river, (sec. 1,) and for this purpose to use the present road as laid out and used, with power to depart from it, and in cases of departure to compensate the owner before making the change, (secs. 10 and 11.) The road from Sharpsburg to the Potomac river is part of the road which the company was authorized by charter to turnpike, but which was never turnpiked, although the charter was continued and kept alive from time to time and regularly, for the purpose; the last con-

tinuing Act being 1849, ch. 57, which continued it to 1851. The Act of 1852, ch. 266, simply dispensed with the corporate duty of stoning this part of the road, and authorized the company, instead, to grade it, and to exercise over it all the rights and powers conferred on the corporation by the original Act. All the other corporate duties remained, and if the company should change the road—as it could, both by the Act of 1814, and the Act of 1852—it must first compensate the owner. The Act of 1852 is in the nature of a supplement, and connected with the Act of 1814, does provide for compensation, and is not therefore liable to the charge of violating the provision of the Constitution of the United States which forbids the taking of private property for public uses without just compensation, nor is it in conflict with any provision of the Constitution of Maryland.

3rd. That by the Act of 1814, ch. 71, sec. 10, and 1852, ch. 266, it was not necessary for defendants to make compensation to the plaintiff, because that part of the public road which ran over the plaintiff's land was not changed in any part, the grading was done on the old road, and therefore no land was taken from the plaintiff, and no compensation was to be allowed him. By the Acts of 1790, ch. 32, sec. 8, and 1791, ch. 82, secs. 3 and 6, the owners of the land appropriated to the old county roads, which the defendants by Acts of 1814 and 1852, were authorized to turnpike and grade, were compensated.

And if it were a case for compensation, if the plaintiff permitted the defendants to make the improvement, without claim or objection, his remedy would not be in trespass; he waived his constitutional right to be first paid.

4th. A road, if not regularly condemned and laid out by law, can nevertheless be dedicated to the public, and long user will establish its character as a public highway. 1 *Bouvier's Law Dic., Dedication.* 3 *Kent's Com.,* 450. *Woolwich on Ways,* 10, (4 *Law Lib.*) *Hill vs. Crosby,* 2

*Pick.*, 466. *Reed vs. Northfield*, 13 *Pick.*, 94. *Perley vs. Chandler*, 6 *Mass.*, 454. *Moale vs. M. & C. C. of Baltimore*, 5 *Md. Rep.*, 322.

5th. It was competent for the Legislature to authorize the company, incorporated by it, to take charge of a public highway and improve it, by turnpiking or grading, and all acts done by it in the due and lawful exercise of its rights and powers, and for the purpose of making the improvements authorized and contemplated by the law, and for keeping the road in repair afterwards, and not for the purpose of wrongfully injuring the proprietor of the land over which the road passes, would be justifiable, and the inconvenience or loss would be *damnum absque injuria.*

Even the county could improve a county road by cutting down and grading, without being a trespasser. And the same rights can be transferred to public corporations, and in the proper exercise of them, the interests of individuals must yield to the accommodation of the public. *Sic utere tuo*, &c., also applies. *Glass Co. vs. Meredith*, 4 *Term Rep.*, 794. *Robbins vs. Borman*, 1 *Pick.*, 122. *Callender vs. Marsh*, 1 *Pick.*, 418. *Patten vs. Holland*, 17 *John.*, 92. *Callender vs. Marsh*, 1 *Pick.*, 429. *Tucker vs. Tower*, 9 *Pick.*, 109. *Adams vs. Emerson*, 6 *Pick.*, 57. *Commonwealth vs. W. T. Road Co.*, 2 *Pick.*, 327. *Crane vs. Meginnis*, 1 *G. & J.*, 463. *The King vs. Robert Wright*, 3 *Barn. & Adol.*, 681, (23 *Eng. C. L. Rep.*, 159.)

GOLDSBOROUGH, J., delivered the opinion of this Court.

The appellees by the Act of 1814, ch. 71, were incorporated with power to make a turnpike road from Boonsborough to a point on the Potomac river. By the 10th section it provides that "the said road be made on, over, and upon the bed of the present road, as laid out and used." The company was authorized to charge tolls on the road upon the completion of it. No effort appears to have been made to carry into effect the object of the char-

ter until after the year 1852. The charter was, however, preserved by successive legislation. By the Act of 1852, ch. 266, the appellees were "authorized to occupy, grade, and if necessary, change the public road leading from Sharpsburg to the Potomac river, and to exercise over said road, all the rights and powers, conferred on said corporation by the Act of 1814, ch. 71, and to charge tolls" as prescribed by this Act. It is conceded that the turnpike road ran through and over the lands of the appellant. The appellee proceeded to occupy and grade the road and tendered no compensation therefor to the appellant. He thereafter instituted suit against the appellee in 1857, in the Circuit Court for Washington County to recover damages for the immediate trespass in occupying and grading the road without his consent; and in the fourth count of his declaration, claimed consequential damages for injuries resulting to his property from the grading of the road, and from other causes set out in this last count. In the first three counts of the plaintiff's declaration and in the subsequent pleadings, applicable thereto, as set out in the record, as also in the first three prayers of the plaintiff and the prayers of the defendant, is involved the important and ruling question, whether the Act of 1852 is constitutional, and whether under that Act the appellee could take legal possession of the highway mentioned in the Act, and occupy and grade the same for the purposes of a turnpike road, without being subject to a new condemnation and compensation to the appellant for that portion of the road which passed over and upon his land. The appellant expressly raises the point "that the Act of Assembly under which the appellee attempts to justify, is unconstitutional, and no justification could be legally pleaded under its provisions."

It may be properly said in reference to this main question and the objection of the appellant, that the highway on

which the turnpike road is established, having been once condemned and compensation made to the then owners of the soil, that the appellant purchased *cum onere;* and in our opinion the Legislature had full power to authorize the appellee to occupy and grade the highway for the purposes of a turnpike road, in which occupation the community alone was interested; and if any compensation could rightfully "be claimed and allowed, it was not by, or to the then owner of the soil, but to the community which had borne the burden of the original condemnation. As to the right of the appellee to grade the road, we find sufficient justification in the original Acts of Assembly, by virtue of which, public highways were established. If under these Acts the county authorities were allowed to use all necessary materials, such as stone and gravel and earth, to make the highways subserve the purpose of promoting the public convenience, we think the appellee was not guilty as alleged, if it exercised a similar power under its charter, It would be contrary to the spirit and intention of the original laws creating public highways not to give them a liberal construction; and though a grant to a private corporation is to be construed strictly, yet it is not to be so construed as to defeat the object of the grant. In the case of *Wright vs. Carter,* 3 *Dutcher's N. J. R.,* 76, the Court says, "by the transfer of the road from the public to a corporation, the title to the soil is not changed, but remains in the owners of the soil of the adjoining lands, and they have the same use and enjoyment of it as they had before: the easement or right of way is transferred to the company to be held by them while they work the road and keep it in repair, subject to the right of the public to use the road upon paying the tolls established by law." The constitutionality of the Act of 1852 is directly supported by the above case, as that question was involved under similar circumstances. The doctrine laid down in *Wright vs. Carter,*

is analogous in every respect to the case before us, and we do not hesitate to recognize its controlling influence. The cases principally relied on by the appellant, and where judgment on the demurrers was rendered for the plaintiff upon a plea of justification, are cases in which *rail roads*, and *canals* have been established, and a clear distinction is drawn between them and plank or turnpike roads.

In the case of *Craig vs. the Rochester City & Brighton R. R. Co.*, 39 *Barbour's Rep.*, 505, the Court refer to several cases establishing the above distinction; that the occupation of a highway by a rail road or canal is permanent and *exclusive*. Whereas in cases of turnpikes, they are regarded as public highways, as every citizen has a right to travel on them in his own mode of conveyance, and the imposition of tolls is a method of keeping them in repair: we are not, however, called on to decide the question raised by the authorities relied on by the appellant, but simply the one before us.

Having decided that the Act of 1852 was constitutional, we are of opinion that the appellee's fourth plea was well pleaded, and the Circuit Court ruled correctly in giving judgment on the plaintiff's demurrers for the defendant, we are further of opinion that the Circuit Court was right in granting the defendant's prayers, and rejecting the first three prayers of the plaintiff. We have thus far confined ourselves to the consideration of the appellant's claim for damages under the first three counts of his declaration and the pleadings and prayers applicable thereto.

The claim for consequential damages set out in the fourth count, depended upon facts to be found by the jury: and the appellant's fourth prayer, which was granted by the Court, properly announced the law upon the rights of the appellant in this particular. Finding that there is no error in the ruling of the Circuit Court

either upon the pleadings or prayers, the judgment will be affirmed.

*Judgment affirmed.*

(Decided October 31st 1864.)